UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

**Lamar Advertising of Penn, LLC,**

**Plaintiff,**

**-V-** **5:05-CV-375**

**John Pitman, Mayor, The Village of Marathon, The Village of Marathon Zoning Board of Appeals, The Village of Marathon Planning Board, Derek Raimo, Code Enforcement Officer, and Atlantic-Inland, Inc.,**

**Defendants**.

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

APPEARANCES:

Harry V. Armani & Associates, LLC
Harry V. Armani, Jr., Esq., of Counsel
2700 Bellevue Avenue
Syracuse, New York 13219
Attorneys for Plaintiff

Lippman O'Connor
Gerard E. O'Connor, Esq., of Counsel
300 Olympic Towers
300 Pearl Street
Buffalo, New York 14202
Attorneys for Defendants John Pitman, Village of Marathon, Village of Marathon Zoning Board of Appeals, and Village of Marathon Planning Board

Hoffmann, Hubert & Hoffman, LLP
Terrance J. Hoffmann, Esq., of counsel
4629 Onondaga Boulevard
Syracuse, New York 13219
Attorneys for Defendants Derek Raimo and Atlantic-Inland, Inc.

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## INTRODUCTION

Plaintiff, Lamar Advertising of Penn, LLC, a company engaged in outdoor advertising, brought this civil rights action after defendant Village of Marathon Zoning Board of Appeals ("ZBA") denied plaintiff's application for an area variance to permit it to erect a billboard exceeding the height and face size restrictions of the Zoning Ordinance enacted by defendant Village of Marathon ("Village"). Plaintiff alleges equal protection, due process, and free speech deprivations as well as a civil rights conspiracy. *See* 42 U.S.C. §§ 1983, 1985. Presently before the Court are motions for summary judgment by plaintiff (Dkt. No. 33) and defendants (Dkt. Nos. 34, 49). As set forth below, the Court denies plaintiff's motion, grants defendants' motions, and dismisses the action on the merits.

## FACTS

On June 28, 2002, plaintiff obtained a building permit to remove an existing billboard on property it leased in the Village and to install a new billboard for purposes of off-premises advertising. Plaintiff removed the old sign and began work on the new sign. On April 1, 2003, defendant John Pitman, Mayor of the Village, executed a Stop Work Order. By letter of April 10, 2003, Village Attorney Edward A. Rantanen, Esq. advised plaintiff that the sign "exceeds the permitted height for a sign in the Village" and that "the apparent face of the sign exceeds the square footage permitted for a sign in the Village[.]"[1]

---

[1] Article XI, Section B, Paragraphs 2 and 4 of the ordinance read in part:

2. In Business Districts, no sign shall be erected or used except:

(a) those permitted in Residential Districts;

(b) signs which may be illuminated on one or two faces, but shall not be flashing unless they are a minimum of fifteen feet in height. Total area of such signs, of which there shall be no more than three, shall not be greater than 8% of the area of the building facade facing the street, and in no instance greater than 75 square feet. Such signs shall be limited to

(continued...)

Plaintiff brought a special proceeding in state court seeking vacatur of the Stop Work Order and a declaration that the building permit was valid. *See* N.Y.C.P.L.R. Article 78. On August 27, 2003, Hon. Phillip R. Rumsey, Supreme Court, Cortland County, dismissed the proceeding, holding that plaintiff had acquired no vested right in the building permit and that the proposed billboard clearly exceeded the Zoning Ordinance restrictions governing sign height and face size. On plaintiff's appeal, the Appellate Division, Third Department, affirmed. *See Matter of Lamar Advertising of Penn, LLC*, 780 N.Y.S. 2d 233 (3d Dep't 2004).

On December 8, 2003, plaintiff applied to the ZBA for an area variance,[2] an interpretation of the Zoning Ordinance, and vacatur of the Stop Work Order. On April 28, 2004, after two public hearings, the ZBA denied the application.

Plaintiff then brought a second Article 78 proceeding challenging on a number of grounds the denial of its application for an area variance. During the course of the proceeding the Village acknowledged it had not submitted plaintiff's variance application to the Cortland County

---

[1](...continued)

> advertising only of business conducted on the premises;
> (c) signs which, when attached to a structure do not project above the height of the wall upon which located, and if free standing, are not affixed to a roof of this structure and in no instance are more than 20 feet above the ground.
> ****

4. General:

> ***
> (c) building permits shall be required for all signs 30 square feet in area or larger, and such sign shall be regarded as structures within the meaning of this ordinance;
> ***
> (e) no free-standing sign shall be higher than 25 feet above grade.***

(Emphasis added.)

[2]

New York Village Law § 7-712-b(3)(a) gives the ZBA "the power, upon an appeal from a decision or determination of the administrative official charged with the enforcement of such local law, to grant area variances as defined herein."

New York Village Law § 7-712(1)(b) defines an area variance as "the authorization by the zoning board of appeals for the use of land in a manner which is not allowed by the dimensional or physical requirements of the applicable zoning regulations."

Planning Board as required by section 239-m of the New York General Municipal Law. On September 14, 2004, Justice Rumsey held that this failure constituted "a jurisdictional defect invalidating the challenged determination" and annulled the denial of the variance without reaching other issues raised by plaintiff. Plaintiff appealed. In its memorandum decision, dated December 15, 2005, the Third Department affirmed, noting that Justice Rumsey had not reached the merits but rather had annulled the ZBA determination on jurisdictional grounds. *Matter of Lamar Advertising of Penn, LLC*, 805 N.Y.S. 2d 495 (3d Dep't 2005).

While the second appeal was pending before the Third Department, plaintiff commenced the instant civil rights action alleging equal protection, due process, and free speech deprivations as well as a civil rights conspiracy. *See* 42 U.S.C. §§ 1983, 1985. In lieu of answering, defendants moved to dismiss the complaint. Plaintiff cross-moved for leave to serve an amended complaint and for summary judgment. By Memorandum-Decision and Order dated February 27, 2006, this Court granted plaintiff leave to serve the amended complaint and otherwise denied the motions.

The amended complaint sets forth in detail the circumstances surrounding plaintiff's application for and receipt of a building permit, plaintiff's progress in erecting the sign, the Stop Work Order issued by Mayor Pitman, plaintiff's application for an area variance, and the proceedings before the ZBA. In particular, plaintiff complains about various aspects of the Village's proceedings including its alleged refusal to provide plaintiff with copies of letters from members of the community opposing the variance; its alleged re-opening of the public hearing; its alleged consideration of *ex parte* discussions with Village residents; its alleged failure to obtain a timely and proper advisory opinion from the Village Planning Board; and its failure to refer the

application to the Cortland County Planning Board. Plaintiff also complains of the ZBA determination that plaintiff should also apply for a use variance because the proposed sign would not comply with the part of the ordinance restricting signs in the business district to "advertising of business on premises." Plaintiff avers that the malice and bad faith of the Village is demonstrated by the letter written by Mayor Pitman to the Cortland County Planning Board urging it to recommend against granting the variance as follows:

> The Village Board of Trustees feels that there is no benefit for this sign other than to provide financial gain for a company or business located outside the Village or for that matter outside of the State of New York. The Village Board is working hard to keep the Village's Rural Small Town look. A variance should only be granted for purposes that benefit the common good of the community, not for an individual's financial interests outside of the Village or State.

The first cause of action in the amended complaint claims defendants deprived plaintiff of due process and equal protection when, acting with malice and without a rational basis, they denied it the "fundamental right" to "apply for an area variance and receive a fair and impartial processing of its application, hearing and consideration." Plaintiff claims it was subjected to "a prejudicial Zoning Board who were predisposed to the disposition of the Plaintiff's application, thus equating to no process at all, as the Plaintiff did not, nor could have, had any semblance of a fair hearing."

Plaintiff's second cause of action claims denial of equal protection as follows: "[A]s compared with other persons similarly situated in application for permits and an area variance, [plaintiff] has been and continues to be selectively treated by Defendants, and such treatment by the Defendants is based upon impermissible considerations such as intent to inhibit or punish the Plaintiff's exercise of [its right to freedom of speech]."

In the third cause of action, plaintiff challenges the Zoning Ordinance insofar as it restricts signs in the business district to signs advertising business conducted on the premises.[3] Plaintiff contends the on-premises restriction offends the First Amendment.

The fourth cause of action alleges that, on its face and as applied, the ordinance is "impermissibly vague" and fails to give proper notice of the speech and conduct that are prohibited. Plaintiff claims this gives rise to free speech and procedural due process violations.

The fifth cause of action is headed "Retaliation." Plaintiff claims: "Defendants' conduct was motivated by and substantially caused by the Plaintiff's exercise of free speech and [its] right to seek administrative and judicial relief."

The remaining causes of action are as follows. In the sixth cause of action, plaintiff alleges defendants' course of conduct deprives it of equal protection because defendants have treated plaintiff selectively, with malicious or bad faith intent to injure it, and without a rational basis. The seventh cause of action alleges a conspiracy by defendants to interfere with plaintiff's right to due process, equal protection, and freedom of speech. The eighth cause of action is a New York State common-law claim for *prima facie* tort.

Plaintiff (Dkt. No. 33) and defendants (Dkt. Nos. 34, 49) move for summary judgment. As set forth below, this Court grants defendants' motions, denies plaintiff's motion, and dismisses the action.

**STANDARD ON SUMMARY JUDGMENT MOTIONS**

A party moving for summary judgment bears the initial burden of demonstrating that there

---

[3] Although the ZBA did not rely on this aspect of the Zoning Ordinance in denying plaintiff's area variance application, on October 12, 2004 the ZBA passed a resolution stating that, in addition to an area variance, plaintiff should also apply for a use variance because the proposed sign would not comply with the on-premises limitation.

is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a genuine issue of material fact requiring a trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**SECTION 1983 ACTIONS, GENERALLY**

Plaintiff's federal claims in the instant action seek redress for alleged violations of its constitutional rights to due process, equal protection, and freedom of speech. Such claims are properly brought under 42 U.S.C. § 1983 ("section 1983"), which provides a civil remedy to any person deprived of a federal constitutional or statutory right by anyone acting under color of state law. A violation of state law that does not rise to the level of a constitutional deprivation cannot support a section 1983 claim. *See Beecher v. Department of Consumer Protection*, __F.3d __, 2008 WL 1817260, *1 (2d Cir. 2008); *Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994). Thus, the Court considers the record evidence in light of the constitutional rights plaintiff asserts.

**DUE PROCESS**

Plaintiff contends defendants' conduct in denying its application for an area variance deprived it of a property right in violation of the requirements of substantive and procedural due process. To prove this claim, plaintiff must first show it possessed a federally protectible

property right in the granting of the variance. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). To make such a showing, plaintiff must establish that it had a "clear entitlement" to the variance under state law. *See id.*; *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) ("This Circuit uses a strict 'entitlement' test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment."). The question of entitlement turns on whether the Village lacks discretion to deny the variance, that is, whether it "is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale*, 170 F.3d at 263; *accord RRI Realty Corp. v. Incorporated Vill. of Southampton*, 870 F.2d 911, 918-19 (2d Cir. 1989) (finding no property interest in building permit because town had discretion to grant or deny it); *R & V Dev., LLC v. Town of Islip*, 2007 WL 14334, *4 (E.D.N.Y. Jan. 3, 2007) (finding no property interest in variance because town had discretion to grant or deny it). This standard recognizes that "the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts." *Zahra*, 48 F.3d at 680.

It is well established under New York law that "[l]ocal zoning boards have broad discretion in considering applications for variances[.]" *Ifrah v. Utschig*, 98 N.Y.2d 304, 308 (2002); *see R & V Dev.*, 2007 WL 14334 at *5.[4] This Court holds that the ZBA had discretion to

---

[4] New York Village Law § 7-712-b(3)(b) provides:

> In making its determination, the zoning board of appeals shall take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant. In making such determination the board shall also consider: (1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created; which consideration shall be relevant to the decision of the

(continued...)

deny plaintiff's application for a variance, and that plaintiff cannot demonstrate a protectible property interest in the granting thereof.[5]

This holding compels dismissal of plaintiff's claims based on denial of procedural due process, *see generally RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201-02 (2d Cir. 1987), and substantive due process. *See Natale*, 170 F.3d at 263.[6] Thus, defendants are entitled to dismissal of the first and fourth causes of action to the extent that they assert due process deprivations.

**EQUAL PROTECTION**

Plaintiff claims that defendants' conduct deprived it of equal protection of the law. Plaintiff does not and cannot claim it is a member of a protected class. Thus, to make out an equal protection claim, plaintiff must show that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Giordano v. City of N.Y.*, 274 F.3d 740, 751 (2d Cir. 2001). To prevail on this type of "selective treatment" or "class of one" claim, plaintiff must demonstrate that "the level of similarity" between it and the others with which it compares itself is "extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005).

---

[4](...continued)
board of appeals, but shall not necessarily preclude the granting of the area variance.

[5] Because plaintiff has not demonstrated a property interest giving rise to a right to due process, the Court does not reach plaintiff's various objections to defendants' procedures. Such matters are the province of state courts.

[6] Nor is there evidence of the type of official misconduct that could support a substantive due process claim. *See Natale*, 170 F.3d at 263 (stating that substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."). The Court notes in particular that the letter from Mayor Pitman urging the Cortland County Planning Board to recommend denial of the variance falls far short of such a standard.

N A M

Plaintiff makes no competent showing that any entity was situated similarly to plaintiff, nor does plaintiff show that any such entity was treated differently. Indeed, there is no showing that anyone else ever applied to the Village for a variance to erect a billboard. Plaintiff's evidence that there are other billboards in the vicinity is meaningless without proof regarding whether each particular billboard is located within the Village boundaries, and if so, in what district it is located, its size and height, whether it was in compliance with the Zoning Ordinance when it was erected, whether a variance was applied for and granted, and what other action, if any, was taken by the Village.

Plaintiff relies heavily on what it calls the "smoking gun" letter from Mayor Pitman urging the Cortland County Planning Board to recommend denial of the variance. However, the factors Mayor Pitman addresses in the letter – *i.e.*, the benefit to the applicant and the good of the community – are among the statutory factors that the ZBA is required to consider under state law.[7] The letter does not constitute evidence that the Village treated plaintiff differently from any similarly situated applicant or that the Village acted without a rational basis.

Accepting as true the record evidence adduced by plaintiff and drawing all inferences in plaintiff's favor, the Court holds that as a matter of law plaintiff cannot show it was denied equal protection. Thus, defendants are entitled to dismissal of the first, second, and sixth causes of action to the extent that they assert denial of equal protection.

**FIRST AMENDMENT**

The third and fourth causes of action in the amended complaint assert First Amendment

---

[7] Village Law § 7-712-b(3)(b) provides in part: "In making its determination [to grant or deny an application for an area variance], the zoning board of appeals shall take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant." (Emphasis added.)

violations. In the third cause of action, plaintiff challenges the constitutionality of the following limitation on signs in business districts: "Such signs shall be limited to advertising only of business conducted on the premises[.]" It is well established that a municipality may not, consistent with the First Amendment, permit commercial on-premises messages while prohibiting noncommercial on-premises messages. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508-13 (1981). This aspect of the Zoning Ordinance offends the First Amendment.

Defendants contend that plaintiff lacks standing to raise the issue of the on-premises limitation. As explained by the Second Circuit: "To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant. Furthermore, ... it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lamar Advertising of Penn, LLC v. Town of Orchard Park* ("*Orchard Park*"), 356 F.3d 365, 373 (2d Cir. 2004) (citations and internal quotes omitted).

With respect to the requirement of an injury, plaintiff argues that the on-premises limitation constitutes a threatened injury because defendants have threatened to enforce the limitation against it. Plaintiff relies on the October 12, 2004 ZBA resolution stating that, in addition to an area variance, plaintiff should also apply for a use variance because the proposed sign would not comply with the on-premises limitation.

Defendants respond that, regardless of whether plaintiff has shown a threat of injury from the on-premises limitation, plaintiff cannot show a likelihood that such injury will be redressed by a favorable decision. Defendants point out that even if the Court were to strike down the on-premises limitation, plaintiff would not be able to erect its sign because the sign would still

violate the ordinance's size and height restrictions. *See, e.g., Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (finding no redressability where a favorable decision for plaintiff on challenged sign code provisions would not allow it to build its proposed signs, which would still violate other unchallenged provisions); *Harp Advertising Ill., Inc. v. Village of Chicago Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993) (finding no standing to challenge sign code's ban on off-premises signs where proposed sign also violated unchallenged zoning restrictions).

Plaintiff asserts redressability on the ground that the on-premises limitation cannot be severed from the remainder of the portion of the Zoning Ordinance pertaining to signs. Plaintiff states: "Plaintiff is challenging the legality of the Village ordinance as a whole because the ordinance size and height limitations are premised on the requirement that all advertising signs are limited to on-premise advertising for local business only which has been ruled as unconstitutional by numerous Courts." Thus, according to plaintiff, upon striking down the on-premises limitation, the Court must strike down the entire sign ordinance, including the size and height limitations, whereupon plaintiff may erect its proposed sign. The Court disagrees.

In considering the severability issue, the Court notes that the on-premises limitation is found in paragraph 2(b)of Article IX, Section B, pertaining to signs in business districts. Paragraph 2(b) reads:

> 2. In Business Districts, no sign shall be erected or used except:
> ***
> (b) signs which may be illuminated on one or two faces, but shall not be flashing unless they are a minimum of fifteen feet in height. Total area of such signs, of which there shall be no more than three, shall not be greater than 8% of the area of the building facade facing the street, and in no instance greater than 75 square feet. Such signs shall be limited to advertising only of business conducted on the premises[.]

Defendants argue that the on-premises limitation can be excised from paragraph 2(b) simply by striking the final sentence, which would leave paragraph 2(b) a clear and constitutional limitation on illumination and size of signs in business districts.[8] The Court is inclined to agree. It is not necessary to decide the question, however; even accepting plaintiff's contention that the on-premises limitation cannot be severed from paragraph 2(b) and that therefore the entire paragraph – including the 75-square-feet restriction – must be stricken, plaintiff would still be unable to erect its sign. The proposed sign would continue to violate paragraph 4(e), which states: "[N]o free-standing sign shall be higher than 25 feet above grade." There is no basis to find that the invalidity of part or all of paragraph 2 (which pertains specifically to signs in business districts) would invalidate any part of paragraph 4, which contains general restrictions pertaining to all signs in all districts. Plaintiff does not specifically challenge the 25-foot height restriction in paragraph 4,[9] and its existence prevents plaintiff from showing a likelihood that its inability to build its sign will be redressed by a favorable decision on the on-premises limitation issue. Thus,

---

[8] Indeed, this is the alteration the Village proposes in Local Law No. 1 of 2007. Based on this proposed amendment, which also sets forth a statement of purpose, defendants argue that the issues surrounding the on-premises limitation are moot. "The voluntary cessation of allegedly illegal conduct usually will render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Orchard Park*, 356 F.3d at 375 (quoting *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir.2002)).

Plaintiff does not argue that the proposed amendment would not cure the alleged constitutional defects in the ordinance. Rather, it argues that the amendment "does not excuse or justify [defendants'] abridgement of Plaintiff's Constitutional Rights regarding Free Speech, Due Process and Equal Protection of the Law, and there is nothing to guarantee that Defendants will not continue to violate Plaintiff['s] aforesaid rights without the proper and lawful intervention of this Court." However, plaintiff's due process and equal protection claims lack merit in any event, and any threatened injury to plaintiff's free speech rights stemming from the on-premises limitation would be obviated by a proper amendment. If in fact the Village enacts the amendment, it appears unlikely that plaintiff could show that defendants intend to reinstate the on-premises limitation thereafter; thus, it is probable that a proper amendment would render plaintiff's free speech claim moot.

[9] Although plaintiff does mention that there is no statement of legislative purpose to the sign ordinance, the parties do not brief the issue. In any event, the record contains ample extrinsic evidence of the purpose of the sign height and size restrictions. *See generally National Adver. Co. v. Town of Babylon*, 900 F.2d 551, 556 (2d Cir. 1990).

plaintiff lacks standing to challenge the Zoning Ordinance on First Amendment grounds. The third cause of action is dismissed.

In its fourth cause of action, plaintiff contends that the Zoning Ordinance insofar as it regulates the height of signs in business districts is impermissibly vague and thus fails to give proper notice of the speech and conduct which are prohibited. Any ambiguity between the 25-foot height provision applicable to all signs and the limitation on business district signs to "20 feet above the ground" is irrelevant inasmuch as plaintiff's sign would greatly exceed either height. Also, there is no merit to plaintiff's contention that the 25-foot height restriction applicable to all signs conflicts with the requirement that all signs more than 30 square feet in size "shall be regarded as structures"; the specific 25-foot height restriction for all signs is clear and unambiguous and plainly overrides the more general provisions regarding structures. The fourth cause of action lacks merit.

**RETALIATION**

In the fifth cause of action, headed "Retaliation," plaintiff claims: "Defendants' conduct was motivated by and substantially caused by the Plaintiff's exercise of free speech and his right to seek administrative and judicial relief." To state a claim for retaliation under section 1983, plaintiff must show (1) its conduct was constitutionally protected, and (2) defendants' conduct was motivated by or substantially caused by plaintiff's exercise of its constitutional rights. *See Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 454 (S.D.N.Y. 1998), *aff'd* 182 F.3d 899 (2nd Cir. 1999); *Gagliardi v. Village of Pawling*,18 F.3d 188, 194 (2d Cir. 1994). Plaintiff has failed to adduce evidence upon which a reasonable jury could find that defendants denied the variance application or otherwise took any action in retaliation for plaintiff's conduct in seeking

administrative and/or judicial relief or exercising its right to free speech. Summary judgment is granted dismissing the fifth cause of action.[10]

**CONSPIRACY**

Plaintiff's seventh cause of action alleges a conspiracy by defendants to interfere with its rights to due process, equal protection, and freedom of speech. *See* 42 U.S.C. § 1985(3). To state a claim under section 1985(3), a plaintiff must plead that two or more persons entered into a conspiracy for the purpose of depriving him of his right to equal protection or equal privileges and immunities under the laws. *See, e.g., Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000). As the *Griffin* court explains: "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102 (footnote omitted). This language "has been interpreted to require a claim of discrimination between classes such as that based on racial bias, national original or religion." *Perrotta v. Irizarry*, 430 F.Supp. 1274, 1278 (D.C.N.Y. 1977), *aff'd without opinion*, 573 F.2d 1294 (2d Cir. 1977). In support of its conspiracy claim, plaintiff alleges in its memorandum of law that it is "a member of the advertising community which is a class-based group of individuals who erected billboards in the general vicinity of the Plaintiff's site." This clearly is not a class protected by section 1985(3). Plaintiff adduces no evidence that the defendants' actions were motivated by

---

[10] To the extent that the fifth cause of action may be read to allege a First Amendment violation on the ground that the ordinance gives unbridled discretion to Village officials, it lacks merit.

invidiously discriminatory animus. Defendants are entitled to summary judgment dismissing the seventh cause of action.

**PRIMA FACIE TORT**

The eighth claim in the amended complaint sounds in *prima facie* tort under New York common law.[11] The elements of *prima facie* tort are: "(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983)). The "touchstone" of such a claim is "disinterested malevolence," meaning that "the defendant's conduct was not only harmful, but done with the sole intent to harm." *Id*. The record evidence would not enable a rational finder of fact to conclude that defendants' actions were solely motivated by intent to harm. Summary judgment is granted dismissing the eighth cause of action on the merits.

**CONCLUSION**

No other issue raised by plaintiff warrants denial of defendants' motions for summary judgment. It is therefore

ORDERED that plaintiff's motion for summary judgment (Dkt. No. 33) is denied; and it is further

---

[11] Although it has dismissed all federal claims in this action, the Court in its discretion retains supplemental jurisdiction over this state law claim, based on considerations of judicial economy, convenience, and fairness. *See generally Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). There has been lengthy pretrial litigation (plaintiff filed its complaint in March 2005), including numerous discovery orders; the action is trial-ready; and this Court is very familiar with the case. *See id.* at 138-39. It would be unfair to require defendants to defend an action for *prima facie* tort in state court after having successfully defended federal causes of action involving the same evidence and highly similar elements.

ORDERED that the motion for summary judgment (Dkt. No. 34) by defendants John Pitman, Village of Marathon, Village of Marathon Zoning Board of Appeals, and Village of Marathon Planning Board is granted; and it is further

ORDERED that the motion for summary judgment (Dkt. No. 49) by defendants Derek Raimo and Atlantic-Inland, Inc. is granted; and it is further

ORDERED that the action is dismissed in its entirety on the merits.

IT IS SO ORDERED

August 6, 2008

Norman A. Mordue
Chief United States District Court Judge